FILED

2020 May-21  AM 09:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| ALAN GREEN, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| | ) | CIVIL ACTION NUMBER: |
| | ) | |
| | ) | |
| | ) | JURY DEMAND |
| | ) | |
| HEWLETT PACKARD ENTERPRISE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

## I.   INTRODUCTION

1.   Plaintiff Green instituted this action for declaratory judgment, monetary relief, injunctive relief, and equitable relief to secure the protection of and to redress the deprivation of rights protected under The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, which provides relief for age-based employment discrimination.

## II.   JURISDICTION

2.   Plaintiff invokes the jurisdiction of this Court under The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

1

### III.    PARTIES

3.    The plaintiff, Alan Green (hereafter "Plaintiff" or "Green", was and is a citizen of the United States, over the age of sixty (60), who has fulfilled all conditions precedent to the institution of this action under The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*

4.    The plaintiff filed a timely charge of discrimination with the EEOC. The EEOC issued a right-to-sue letter, and thereafter Green filed timely filed this suit.

5.    The defendant, Hewlett-Packard Enterprise Company (hereafter "HPE"), is subject to suit under The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*  HPE does or did business in this jurisdiction.

### IV.    CLASS CERTIFICATION

6.    Under The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*  (hereafter "ADEA"), the named plaintiff sues on behalf of himself and a putative class to redress Defendant's widespread and pervasive discrimination favoring employees based on age.

7.    Plaintiff seeks to represent a putative class defined as follows:

*Certain persons over the age of 39, employed as part of HPE's USA Business Unit and terminated at any time since May 1, 2016, as part of HPE's workforce reduction, and or not transferred to alternative positions within HPE after receiving notice of their selection.*

8.    Class certification is sought separately for counts two and three below.

Plaintiff seeks class certification under Rule 23(b)(2), 23(b)(3), and or hybrid certification under both Rules 23(b)(2) and 23(b)(3).

9.      Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) for equitable relief on the plaintiff's disparate impact claim.   Class certification is also proper under Rule 23(b)(2) for the equitable relief sought on the plaintiff's pattern-or-practice claims and or claims of disparate treatment.

10.      The common issues of fact and law, including those identified in the paragraphs below, affecting the claims of the named plaintiff and the proposed class members, predominate over any issues affecting only individual claims.

11.      Certification of the proposed class is superior to other means for the fair, efficient, and economical presentation of evidence, and adjudication of common questions of law and fact for the named plaintiff, proposed class and the defendant. This is true because (a) the named plaintiff's individual claims require resolution of the common question of whether the defendant engaged in a systemic pattern of age-based employment discrimination; (b) the named plaintiff seeks remedies to undo the adverse effects of such discrimination in their life and career and to prevent continued discrimination; (c) the named plaintiff has standing to seek such relief in part because of the adverse effect that this discrimination had on him and the putative class he wishes to represent, as well as his own interest in working and living in conditions free from the pernicious effects of such bias; and (d) the

cost of proving the defendant's pattern and practice of discrimination makes it impracticable for the named plaintiff and members of the proposed class to control the prosecution of their claims individually.

12.     The named plaintiff was denied employment under a company-wide practice of workforce reduction applicable to the class, centrally controlled and set.

13.     The named plaintiff is a member of the class or sub-class he seeks to represent for each of the stated ADEA causes of action.

14.     The defendant has acted on grounds generally applicable to the class by adopting and following systemic practices and procedures that are discriminatory based on age.  These systemic practices and procedures are the defendant's standard operating procedure under its CEO rather than a sporadic occurrence.

15.     The named plaintiff seeks to represent classes comprising 100 individuals or more and too numerous to make joinder practicable.

16.     The plaintiff and members of the proposed class were directly affected by Defendant's discriminatory policies, practices, and procedures.

17.     The claims of the named plaintiff and the relief he seeks is the same as the claims of the putative class and the relief necessary to remedy their claims.  The claims and the relief sought by the named plaintiff is also typical of that of the putative class.

4

18.    The prosecution of Plaintiff's discrimination claims requires adjudication of these questions common to the putative class: a) whether the defendant has engaged in intentional disparate impact, and or disparate treatment relative to terminations under its workforce reductions in a manner made unlawful under the ADEA; b) whether the defendant has engaged in employment practices having a disparate impact in a manner made unlawful under the ADEA; c) whether such employment practices having a disparate impact are a "business necessity" despite such adverse impact; and d) whether there are alternatives to such employment practices that serve the same purpose with less adverse impact.

19.    The named plaintiff's individual and class claims rely on the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims.  Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

20.    The relief necessary to remedy the claims of the plaintiff is the same relief necessary for the class, and therefore, the typicality requirement of Rule 23(a)(3) is satisfied.

21.    The named plaintiff seeks the following relief for his individual claims and those of the class: (1) a declaratory judgment that the defendant has engaged in systemic practices having a disparate impact on employees protected under the ADEA, and or a pattern-or-practice of treating these same individuals disparately;

(2) a permanent injunction against such continuing discrimination; (3) a restructuring of the defendant's practices and procedures;  (4) lost wages; (5) such other monetary and non-monetary remedies necessary to make the plaintiff and the class he seeks to represent whole; and (6) attorneys' fees and expenses.

22.    To gain relief for himself, and for the putative class members, the named plaintiff must first establish the existence of disparate impact and or systemic discrimination based on age as the premise of the relief sought.  Without class certification, the same evidence and issues are subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

23.    The predominance standard of Rule 23(b)(3) is satisfied because proof of the class-wide pattern-or-practice establishes liability at Stage I and the entitlement of each class member to 1) affirmative injunctive and declaratory relief to undo the effects of that class-wide pattern-or-practice, and, (2) a presumption of individualized harm for each class member that can only be overcome if the defendant carries a burden of "clear and convincing evidence" that the class members' employment opportunities would have remained the same even absent the proven pattern-or-practice.

24.    The pattern-or-practice claim is common to both: (1) class-wide liability and injunctive relief at Stage I of the required bifurcated trial, and (2) the

6

presumption of individual damage that carries over to Stage II of such trial.

25.     Since the same class-wide statistics and centralized workforce selection processes apply, the pattern-or-practice question is common to every class member.

26.     Plaintiff's pattern-or-practice claim focuses solely on the broad pattern and practice, not the merits of individual claims.  Individual instances of disparate hiring are merely manifestations of such common policy or pattern-or-practice.

27.     The plaintiff and his proposed class have no plain, adequate or complete remedy at law to redress the wrongs alleged going forward. This suit for injunctive and declaratory remedies is their only means of securing adequate relief beyond monetary compensation for the past wrongs alleged.

28.     The plaintiff and the class he seeks to represent are suffering. They will continue to suffer irreparable injury from the defendant's unlawful policies and practices unless enjoined and remedied by this Court.

29.     Injunctive, declaratory, and monetary remedies are the predominant relief sought, with injunctive and declaratory relief dependent upon proof of the defendant's individual and class-wide liability at the end of Stage I of a bifurcated trial.  Such determination at Stage I is also the essential predicate for the named plaintiff's and class members' entitlement to monetary and non-monetary remedies at Stage II of such a trial.

30.     Declaratory and injunctive relief flows directly and automatically from proof of the common questions of law and fact regarding the systemic discrimination alleged herein. Such relief is the factual and legal predicate for the named plaintiff's and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by such systemic discrimination.

31.     A class-wide presumption of entitlement to backpay for every class member arises from a finding of a pattern-or-practice of discrimination at Stage I of the proceeding.

32.     The defendant has refused to act on grounds generally applicable to the class by failing to adopt or follow selection procedures for workforce reductions without disparate impact, or otherwise by systemically discriminating against employees protected under the ADEA.  The defendant's systemic discrimination and refusal to act on grounds not discriminatory has made appropriate final injunctive relief and declaratory relief regarding the class.

33.     The defendant willfully violated the ADEA by laying off employees covered under the ADEA at unequal and lesser rates compared to younger employees.  Defendant's conduct was willful and in reckless disregard to federal law and statutes.

34.     Liquidated damages are appropriate, and they too flow directly from the defendant's wrongful conduct proven at the pattern-or-practice stage of the case

and not from any individualized evidence about class members.

35.     The class representative's interests are coextensive with those of the putative class because they seek to remedy the defendant's discriminatory employment practices, so Defendant does not reject employees for continued employment, protected under the ADEA, at rates disproportionately higher than their younger peers.  The class representative is able and willing to represent the class fairly and vigorously as he pursues their goals common to the class through this action.

36.     Plaintiff's counsel is qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to prosecute an employment discrimination class action of this size and complexity.

37.     The combined interest, experience, and resources of the plaintiff and his counsel to competently litigate the individual and class claims of age-based employment discrimination at issue satisfy the adequacy of representation requirement under Fed. R. Civ. P. 23(a)(4).

38.     As additional facts supporting class certification, Plaintiff adopts and incorporates the paragraphs below.

## V.    **STATEMENT OF FACTS**

39.     In January of 2011, Meg Whitman (hereafter "Whitman") joined Hewlett-Packard Company's board of directors, later filling the position of Chief

Executive Officer of the company.

40.    In 2012, Whitman announced a five-year plan to restructure the company.

41.    Whitman has publicly proclaimed the restructuring is and was necessary to "keep up with this next generation," and that it would bring in "early-career people," "have a whole host of young people," and "ramp up [its] early career hiring, our college hiring."   After that, workforce reductions ensued while new hiring continued.

42.    In November of 2015, as part of the restructuring plan, Hewlett Packard Company split into two companies, Hewlette Packard Inc. (hereafter "HPI") and Hewlett Packard Enterprise Company (hereafter "HPE").

43.    As part of the restructuring, combined, Hewlett-Packard Company, HPE and HPI have laid off roughly 80,000 employees.

44.    During this transition, management made known a set percentage of outside new hires should be young graduates or individuals early in their careers.

45.    In July of 2017, Whitman stepped down as chair of Hewlett-Packard's board of directors but remained CEO of HPE.

46.    It is around this time that HPE announced Plaintiff Green's division would layoff at least 2,000 employees company-wide.

47.    Whitman made and or approved the decision to layoff these workers

as part of her overall strategy to make the company's labor pyramid look like a "flat triangle" with large numbers of young people comprising its base; instead of a labor diamond.

48.     As evidenced on this excerpt from Green's payroll check stub, his Business Unit was, "USA", and his Department was "HPE-Hewlett Packard Enterprise":

| Hewlett Packard Enterprise | **Hewlett Packard Enterprise Co**<br>11445 Compaq Center Dr W, Mailstop<br>050400<br>Houston TX  77070<br>866/372-2034 | Pay Group:<br>Pay Begin Date:<br>Pay End Date: | U25-HPE-U25 Semi-monthly paygroup<br>09/16/2017<br>09/30/2017 | Business Unit:<br>Advice #:<br>Advice Date: | USA<br>000000<br>09/29/2 |
|---|---|---|---|---|---|
| | | | | **TAX DATA:** | |
| **George Alan Green** | | Employee ID:<br>Department: | 00000285374<br>HPE-Hewlett Packard Enterprise | Marital Status:<br>Allowances: | |

49.     Green started his employment with Hewlett-Packard Company in 1990, left, and was rehired in 2000 to work as a Project Manager.  After the 2015 split, he continued his work but as an employee of HPE.  When his job with HPE ended, he was working as a Pre-sale Consultant.

50.     As part of his role as a consultant, Green partnered with sales representatives to help understand customer needs, map those needs HPE, and design the customer's system.

51.     Green's performance with HPE was satisfactory, leading up to and through the date of his separation.

52.     HPE represented to the EEOC in its Position Statement that the workforce reduction that impacted Green was a result of business necessity.

53.     HPE represented to the EEOC in its Position Statement that the ability

11

to understand customer needs, map those needs to HPE's portfolio, and design the customer's system, is essential to the PreSale process.

54.    Green possessed the ability to understand customer needs, map those needs to HPE's portfolio, and design the customer's system.

55.    Conversely, HPE represented to the EEOC in its Position Statement that a Presales Project Manager requires some understanding of HPE's technology and solutions. Still, HPE does not expect them to have technical expertise, just the ability to coordinate.

56.    Green possessed the ability to coordinate the activities of others if and when necessary.

57.    HPE represented to the EEOC in its Position Statement that it provided Green an opportunity to conduct a job search within HPE, but Green did not find alternate employment.

58.    HPE represented to the EEOC that Green was a Presales Project Manager.

59.    HPE provided Green a document titled Attachment A, Notice About The Hewlett Packard Enterprise Workforce Reduction Plan/MSA Program Severance Benefits.

60.    The notice contains the following excerpt,

> Enclosed is a listing of the ages and job titles of the Company's employees in the employee's decisional unit of the employee's organization, as of 10/23/2017, who are (1) eligible for the WFR Plan or MSA Program, but have not been selected to be terminated and have not been offered severance benefits or (2) eligible for the WFR Plan or MSA Program and have been selected to be terminated and offered severance benefits pursuant to the respective Plan or Program.

61.     The list accompanying Attachment A to the notice does not evidence anyone with the title PreSales, Project Manager, as selected for termination.

62.     There are statistically significant disparities in the frequency at which Defendant terminates employees protected under the ADEA as part of its workforce reduction practices, compared to the rate at which it terminates the employment of those employees' younger peers.

63.     Plaintiff, as the class representative, has experienced lesser employment opportunities with HPE compared to his younger co-workers.

## VI.   <u>CAUSES OF ACTION</u>

### A. COUNT 1: AGE-BASED DISCRIMINATION / DISPARATE TREATMENT (INDIVIDUAL CLAIMS)

64.     Green asserts Defendant decided to select him for inclusion in HPE's workforce reduction under a facially neutral workforce reduction policy or policies having the effect of age-based discrimination, or in the alternative, because of his age.

65.     Plaintiff was qualified for the positions he held, and others he did not, yet younger employees were selected to remain employed and perform his responsibilities.

66.     Defendant asserts it eliminated Plaintiff's position due to business necessity; however, this reason is a pretext for discrimination, as evidenced by Defendant's false and or contradictory representations made to the EEOC in support of the same.

67.     As a result of Defendant's facially neutral policies, practices, or intentional actions, Plaintiff was illegally discriminated due to his age, and he has suffered lost wages and benefits associated with the same.

## B. COUNT 2: AGE BASED DISCRIMINATION - DISPARATE IMPACT (CLASS CLAIMS)

68.     The plaintiff restates and incorporates the paragraphs above with similar force and effect.

69.     Green sues for disparate impact age-based discrimination under the ADEA.

70.     Plaintiff was sixty-two (62) years of age when he was terminated as part of a workforce reduction.

71.     Defendant maintains records containing the information required when maintaining EEO logs as part of an affirmative action plan.

72.     During the six (6) months preceding the filing of his EEOC charge, Plaintiff was terminated allegedly due to his job elimination under a workforce reduction plan.

73.      The employees not selected for inclusion in the workforce reduction

are distribution center is disproportionately younger compared to the qualified, older employees protected under the ADEA, chosen for inclusion.

74.    Defendant's facially neutral policies, patterns or practices, and or selection procedures had the effect of denying employment opportunities and other terms and conditions of employment to employees protected under the ADEA on the same terms applied to younger employees.

75.    Defendant's policies, patterns, and practices have disparately impacted the named plaintiff and similarly situated class members.

76.    There are statistically significant disparities in the frequency in which older employees protected under the ADEA were terminated as part of a workforce reduction, compared to younger employees.

77.    Defendant's workforce reduction practices discriminate between employees based on age at frequencies higher than that of employees perceived as young.

78.    This age-based discrimination resulted from Defendant's facially neutral workforce reduction policy or practices that had the unintended effect of restricting older employees from competing for continued employment equally and led to Defendant's reputation of hostility towards older workers.

79.    Defendant's procedures for selecting those included in a workforce reduction incorporate the following practices causing age-based discrimination: (1)

reliance upon procedures incorporating criteria which permit age-based stereotypes and bias of its supervisors, human resources staff; (2) refusal to establish or follow policies, procedures, or criteria that reduce or eliminate disparate impact arising from the workforce reduction process; and (3) the use of arbitrary selection criteria.

80.     Defendant's workforce reduction policies and procedures are not valid, job-related, or justified by business necessity.  There are alternative policies and procedures available to the defendant with less disparate impact on older employees protected under the ADEA having equal or greater validity and job relatedness.

**WHEREFORE**, the Plaintiff respectfully prays this Court assume jurisdiction and provide him and the class he seeks to represent injunctive relief and declaratory relief, equitable relief, back pay (plus interest), the value of lost benefits, attorneys' fees, costs, and expenses, and all other relief allowed or deemed just and proper by the Court.

## C. COUNT 3: AGE-BASED DISCRIMINATION – PATTERN-OR-PRACTICE (CLASS CLAIMS)

81.     The Plaintiff incorporates and restates the paragraphs above with similar force and effect.

82.     Plaintiff brings his age-based pattern-or-practice claims on his own and behalf of the putative class

83.     Defendant has engaged in a pattern-or-practice of disparate treatment against older employed protected under the ADEA concerning their selection for

inclusion in workforce reductions.

84.     Defendant provided less favorable employment to the plaintiff and similarly situated employees than that provided to their younger co-workers.

85.     The plaintiff and the class he seeks to represent were directly affected by the discriminatory policies, practices, and procedures at issue.  The claims of the named plaintiff and the relief necessary to remedy his claims are the same as the claims of the putative class and the relief necessary to remedy its claims.  The allegations and the relief sought by the named plaintiff are typical of that of the putative class.

86.     The named plaintiff and the class he seeks to represent were subjected to systemic discrimination including, but not limited to, a pattern and practice of intentional discrimination and a battery of practices intentionally causing a disparate illegal impact on their employment.

87.     Such discrimination includes a policy and practice of targeting older employees protected under the ADEA for inclusion in workforce reductions and subjecting them to unequal terms and conditions of employment compared to their younger co-workers.

88.     Defendant's workforce reduction selection procedures incorporate the following discriminatory practices: (1) reliance upon selection procedures and criteria which encourage the incorporation of age stereotypes and bias of its human

resources staff and management; (2) refusal to establish or follow policies, procedures, or criteria that reduce or eliminate intentional and illegal bias or stereotypes to reshape its labor pyramid's base to comprise younger employees; and (3) pre-selection of younger workers for continued employment considered new graduates or just starting their careers; and (5) discouragement of management decisions to retain older workers protected under the ADEA where younger employees can perform the job.

89.    Defendant's selection practices and procedures are and were intended to discriminate against the named plaintiff and the class he seeks to represent.

90.    Defendant's selection practices and procedures are and were pretext reasons for intentional discrimination.

91.    Defendant has continuously engaged in, condoned, and ratified age-based discrimination.

92.    The named plaintiff has no plain, adequate, or complete remedy of law to redress the wrongs alleged and this suit for backpay; an injunction, other equitable relief, and a declaratory judgment is the only means of securing adequate relief.

93.    The entitlement to such damages is appropriately part of the same proof at Stage I of a bifurcated trial for the class-wide relief sought as part of Count III, and do not require individualized proof Defendant directed discrimination

towards each member of the class.

94.     From Defendant's discriminatory employment practices, Plaintiff and the class have experienced harm, including loss of compensation, back, and front pay, and other employment benefits.

**WHEREFORE**, the plaintiff respectfully prays this Court assume jurisdiction and provide the plaintiff and the class he seeks to represent injunctive relief and other equitable relief, declaratory relief, lost wages (plus interest), the value of lost benefits, liquidated damages, attorneys' fees, costs and expenses, and all other relief allowed or deemed just and proper by the Court.

## VII.   **PRAYER FOR RELIEF**

95.     The plaintiff on behalf of himself and behalf of the class he seeks to represent requests injunctive relief and declaratory relief, equitable relief, lost wages (plus interest), liquidated damages, attorneys' fees, costs, and expenses.

Respectfully submitted,

/s/ Robert J. Camp
**Robert J. Camp**
**Counsel for the Plaintiff**

**OF COUNSEL:**
**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, L.L.C.**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500